UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| MICROTECHNOLOGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AUTONOMY, INC. (a/k/a HP AUTONOMY),<br><br>Defendant,<br><br>and<br><br>HEWLETT-PACKARD COMPANY,<br><br>Nominal Defendant. | Case No.   15-cv-2220-RMW-HRL<br><br>**LETTER OF REQUEST REGARDING SUSHOVAN HUSSAIN** |

# REQUEST FOR JUDICIAL ASSISTANCE PURSUANT TO THE HAGUE CONVENTION ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS CONCLUDED 18 MARCH 1970

To: Senior Master of the Queen's Bench Division
Royal Courts of Justice, London, England

From: Ronald M. Whyte, Senior United States District Judge
United States District Court for the Northern District of California

Re: Request for Judicial Assistance Pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters Concluded 18 March 1970

**I.   Information provided pursuant to Convention Article 3(a).**

A.   Requesting Court.

In conformity with Article 3 of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, concluded 18 March 1970 (the "Convention"), the United States District Court for the Northern District of California (Senior United States District Judge Ronald M. Whyte presiding), respectfully requests the assistance of your honorable court with regard to the matters set forth below.

The Court considers that the evidence sought is directly relevant to the issues in dispute and is not pre-trial discovery within the meaning of Article 23 of the Hague Evidence Convention, that is, discovery intended to lead to relevant evidence for trial. The evidence sought is to be used—and would be admissible—in the trial in California.

B.   Full title of action.

The full title of the action in which international judicial assistance is requested is:

MicroTechnologies, LLC v. Autonomy, Inc. (aka "HP Autonomy") and Autonomy Systems, Limited.

The case number of the action in the United States District Court for the Northern District of California is 15-cv-2220 RMW.[1]

## II. Information provided pursuant to Convention Article 3(b).

A. Name of the parties to the action.

The plaintiff in the action is MicroTechnologies, LLC ("MicroTech"). MicroTech is a privately held limited liability company organized under the laws of the Commonwealth of Virginia with its primary place of business located at 8330 Boone Boulevard, Suite 600, Vienna, Virginia 22182. MicroTech is represented in this action by the law firms of Saveri & Saveri, Inc., 706 Sansome Street, San Francisco, California 94111, and Meister Seelig & Fein, LLP, 125 Park Avenue, New York, New York, 10017.

The defendants in this action are Autonomy, Inc. and Autonomy Systems Limited (together, the "Autonomy Parties"). Autonomy, Inc. is a privately-held corporation organized under the laws of the State of New Jersey with its principal place of business at 1140 Enterprise Way, Building G, Sunnyvale, California 94089. Autonomy, Inc. is at present a wholly-owned subsidiary of Hewlett-Packard Company. Autonomy Systems Limited is incorporated under the laws of England with a registered office at Amen Corner, Cain Road, Bracknell, Berkshire, United Kingdom, RG12 1HN.

---

[1] The Defendants and Plaintiffs-in-Counterclaim, Autonomy, Inc. and Autonomy Systems Limited, are claimants pursuing an action in England in the High Court of Justice, Chancery Division against Michael Lynch and Sushovan Hussain in relation to their conduct as, respectively, Chief Executive Officer and Chief Financial Officer of Autonomy Corporation plc. (now Autonomy Corporation Limited). In that action, the claimants allege misconduct relating to, among other things, the Autonomy group's relationship and dealings with various value added resellers. The Plaintiff in this matter pending before the United States District Court for the Northern District of California, MicroTechnologies, LLC, is one of the value added resellers in question. In the English action, the claimants allege impropriety in relation to, amongst other things, various transactions entered into between Autonomy, Inc. and the Plaintiff. The Letter of Request is narrowly tailored for the purposes of obtaining evidence for the trial of the matter pending in California. The English action is captioned *Autonomy Corporation Limited, et al. v. Michael Lynch, et al.*, Claim No. HC-2015-001324. Assistance is sought from the Queen's Bench Division and not the Chancery Court in light of the note at paragraph 34.21.16 of the Civil Procedure Rules 1998 which requires such applications to be made to a Master of the Queen's Bench Division.

Defendants are represented in this action by the law firms of Farella Braun & Martell LLP, Russ Building, 235 Montgomery Street, San Francisco, California 94104, and Choate Hall and Stewart LLP, Two International Place, Boston, Massachusetts 02110.

### III. Information provided pursuant to Convention Article 3(c).

Plaintiff MicroTech filed this civil action against defendants Autonomy, Inc. and Hewlett-Packard Company ("HP") on May 18, 2015, in the United States District Court for the Northern District of California. A copy of the Complaint is attached hereto as Exhibit A. On June 29, 2015, Autonomy, Inc. filed an Answer and Counterclaim against Plaintiff MicroTech. A copy of the Answer and Counterclaim is attached hereto as Exhibit B. Also on June 29, 2015, Autonomy Systems Limited moved to intervene as defendant and to assert a counterclaim against MicroTech. A copy of Autonomy Systems Limited's Answer and Counterclaim is attached hereto as Exhibit C. Also on June 29, 2015, HP moved to dismiss the claim against it on the grounds that, while as a result of HP's acquisition of Autonomy in or around October 2011 the Autonomy Parties were now wholly-owned HP subsidiaries, HP did not own them at the time of the conduct alleged in the Complaint and HP could not, as a matter of law, be held liable for such conduct. By stipulation of the parties and order of the court, Autonomy Systems Limited was permitted to intervene and become a party to the case on August 11, 2015, and the claims against HP were dismissed.

It is alleged in this lawsuit that on or about June 30, 2006, MicroTech entered into a Master Reseller Agreement with Autonomy (attached as Exhibit A to the Complaint), whereby MicroTech became an authorized reseller of Autonomy's proprietary software. The Complaint alleges that under the Master Reseller Agreement, in practice, Autonomy would agree to sell its software to an end-user and provide the details of that transaction to MicroTech; MicroTech would then issue a purchase order for the same software; and, MicroTech thereafter would pay

Autonomy for the software. The Complaint further asserts that Autonomy would deliver the identified software to the end-user, and the end-user would pay either Autonomy or MicroTech for the software. MicroTech alleges that it would then be entitled, typically, to ten percent of the transaction price in exchange for its participation in the transaction. It is alleged in the Complaint that, during the operation of the Master Reseller Agreement, Autonomy and MicroTech completed numerous transactions in this manner.

The Complaint focuses on two specific transactions: a March 31, 2010, purchase order for software to be relicensed to the Vatican Library as the end-user; and a June 30, 2010, purchase order for software to be relicensed to HP in its capacity as an end-user of Autonomy software. MicroTech alleges that between March 31, 2010, and July 1, 2011, it paid $9,221,331.71 of the $11.5 million called for under the Vatican Library purchase order and that Autonomy neither concluded a transaction with the Vatican Library, nor repaid that sum to MicroTech. MicroTech also alleges that it paid, in full, the $7,350,000 purchase order for HP (as end-user) and Autonomy did not repay MicroTech for the unconsummated transaction.

In their Answers, the Autonomy Parties deny MicroTech's allegations and assert that the transactions alleged in the Complaint, and others, were part of a scheme to inflate improperly the reported revenue and profit of Autonomy Corporation plc (then the parent of Autonomy, Inc. and Autonomy Systems Limited). The Answers further allege that the payments by MicroTech to Autonomy, Inc. were illusory because they were made with funds that had been funneled to MicroTech by Autonomy, Inc. or Autonomy Systems Limited.

The Autonomy Parties' Counterclaims allege that the purported transactions between MicroTech (along with other purported value added resellers) and Autonomy, Inc. and ASL fostered the appearance that the Autonomy group of companies was growing rapidly, meeting market expectations, and enjoying an increasing market share. That appearance, in turn, caused

the price of Autonomy Corporation plc's stock to rise and made it an attractive candidate for acquisition by a third party. The disputed transactions with MicroTech are listed below at VI. A. 3.

In their Counterclaims, the Autonomy Parties allege that MicroTech was a knowing participant in the fraudulent activity of Sushovan Hussain and other officers and directors of Autonomy, Inc. and Autonomy Systems Limited. These individuals caused the Autonomy Parties to make payments to MicroTech to induce MicroTech to participate, and reward it for participating in that fraudulent activity. Those payments were made at the direction of Hussain and other officers and directors of the Autonomy Parties, who thereby breached their fiduciary duties to the Autonomy Parties. The Counterclaims allege that MicroTech knowingly aided, abetted, and benefitted from these breaches of fiduciary duty.

This Court has entered an order establishing March 25, 2016, as the deadline to complete non-expert discovery (including depositions). The trial of the case is to begin on October 17, 2016.

## IV. Information provided pursuant to Convention Article 3(d).

A. Evidence to be obtained.

It is necessary for the due determination of the matters in dispute between the parties in the matter pending before the United States District Court for the Northern District of California that you cause the witness listed below, who is resident within your jurisdiction, to be subject to oral examination for use at the trial of this matter, which is scheduled to begin October 17, 2016.

This letter of request is issued at the request of Defendants/Plaintiffs-in-Counterclaim Autonomy, Inc. and Autonomy Systems Limited.

**V.     Information provided pursuant to Convention Article 3(e).**

    A.     <u>Name and address of the witness.</u>

The name and last known address of the witness from whom testimony is sought is listed below:

> Sushovan Hussain
> Cade House
> 2 Chipstead Lane
> Sevenoaks, Kent, TN13 2AG

In connection with the aforementioned matter pending in the High Court of Justice, Mr. Hussain is represented by Ian Hammond and Paolo Caldato of Simmons & Simmons LLP, CityPoint, One Ropemaker Street, London EC2Y 9SS.

**VI.     Information provided pursuant to Convention Article 3(f).**

    A.     <u>Testimony to be provided by the witness.</u>

Hussain is a qualified chartered accountant. He was a director of Autonomy Corporation plc ("Autonomy Parent"), of which the Autonomy Parties were at all relevant times wholly-owned subsidiaries. He was a director of Autonomy Inc. and Autonomy Systems Limited at all relevant times. He was Chief Financial Officer of the Autonomy group companies at all relevant times, and an employee of Autonomy Systems Limited. The parties intend to ask Hussain about the transactions at issue in this matter, as well as relevant e-mails and documents concerning the same, as explained below.

It is hereby requested that you cause Mr. Hussain to give testimony on the following subjects:

    1.     His educational background, employment history, professional qualifications, and personal preparation for the deposition.

    2.     His knowledge of any agreements or understandings, formal or informal, written or oral, or manifested by the conduct of the parties to the Autonomy Government Reseller Agreement between MicroTech and Autonomy, Inc., entered into on or about June 30, 2006 (the "MicroTech

Reseller Agreement") that supplemented or varied the terms of the MicroTech Reseller Agreement, and if so, the nature of such supplemental or varied terms or conduct, how they came to be agreed to between Autonomy and MicroTech, and all communications of which Mr. Hussain is aware regarding such supplemental or varied terms or conduct that involved members of Autonomy management, including without limitation himself, Michael Lynch, Stephen Chamberlain, Christopher "Stouffer" Egan, Joel Scott, and Andrew Kanter.

3. As to each of the following transactions between Autonomy, Inc. and MicroTech for the indicated purported end-users:

   a. Discover Technologies LLC (on or about December 30, 2009);

   b. Morgan Stanley & Co. (on or about December 31, 2009);

   c. Honeywell Aerospace (on or about December 31, 2009);

   d. Manufacturers Life Insurance Company (on or about December 31, 2009);

   e. The Vatican Library (on or about March 31, 2010);

   f. United States Department of the Interior (on or about December 31, 2010);

   g. Bank of Montreal (on or about March 31, 2011);

   h. General Motors-Xerox Corporation (on or about March 31, 2011);

   i. HP (on or about June 30, 2011);

   j. Bank of America (on or about December 31, 2011);

      (1) For what purpose did Autonomy involve MicroTech in the transaction?
      (2) Was the end-user aware of the involvement of MicroTech in the transaction?
      (3) Was it Autonomy's intent that MicroTech would have any interaction with the end-user in connection with the transaction and, if so, what was the nature of the intended interaction?
      (4) Did MicroTech, in fact, have any interaction with the end-user with respect to the transaction and, if so, what was the nature of the interaction?
      (5) If Autonomy paid MicroTech a "marketing assistance fee" or other fee or commission in connection with the transaction, what was the amount of such fee or commission and what service performed or assistance provided by MicroTech entitled it to the fee or commission?

      (6)    What efforts, if any, were made by Autonomy to collect from MicroTech sums it owed to Autonomy in connection with these transactions?

      (7)    Did Autonomy take steps to relieve MicroTech of its payment obligations to Autonomy in connection with these transactions, including without limitation by the issuance of credit notes or memos, write-offs, or reversals, or by the purchase of goods or services from MicroTech and, if so, why did Autonomy do so?

      (8)    What were the reasons for Autonomy's decision to recognize revenue on these transactions upon receiving purchase orders from MicroTech but prior to agreements by the purported end-users to purchase the products or services at issue?

      (9)    What communications is Mr. Hussain aware of regarding such transactions, and specifically the subjects of subsections (1)-(8) above, involving members of Autonomy management, including without limitation himself, Michael Lynch, Stephen Chamberlain, Christopher "Stouffer" Egan, Joel Scott, and Andrew Kanter.

4. The purpose of Autonomy's investment in MicroTech's Advanced Technology Innovation Center (aka "Innovation and Integration Center" or "I2C"), which resulted in a purchase order dated December 30, 2010.

5. Any evaluation, assessment or investigation of the need for or utility of the Advanced Technology Innovation Center undertaken by Autonomy before making the investment described in item 4.

6. The use, if any, Autonomy made of the Advanced Technology Innovation Center after its investment and, if none, why.

7. The purpose of Autonomy's purchase of the Federal Cloud Platform, which resulted in an Independent Contractor Agreement entered into as of August 12, 2011.

8. Any evaluation, assessment or investigation of the need for or utility of the Federal Cloud Platform undertaken by Autonomy before making the purchase described in item 7.

9. The use, if any, Autonomy made of the Federal Cloud Platform and, if none, why.

10. Any communications of which Mr. Hussain is aware involving members of Autonomy management, including without limitation himself, Michael Lynch, Stephen Chamberlain, Christopher "Stouffer" Egan, Joel Scott, and Andrew Kanter, and any officer, member, employee or shareholder of MicroTech, including without limitation David Truitt, Stephen Truitt,

Anthony Jiminez, John Cronin, or Tomas Esterrich regarding any of the subjects identified in this section VI A.

## VII. Information provided pursuant to Convention Article 3(h).

### A. Form of the deposition.

The witness should be examined under oath. I respectfully request that you cause the evidence of the witness to be reduced into writing; cause all documents produced on such examinations to be duly marked for identification; and cause copies of the documents to be made. I further request that you authenticate such examinations by the seal of your Court in such way as is in accordance with your procedure, and return the written evidence and documents produced to me as follows:

> Ronald M. Whyte, Senior United States District Judge
> Robert F. Peckham Federal Building
> 280 S 1st Street
> San Jose, California 95113

## VIII. Information provided pursuant to Convention Article 3(i).

### A. Procedure.

The witness should be given an oath before testifying; the testimony should be transcribed by a stenographer; and the testimony should be recorded on video by a videographer. In addition, I request that the attorneys for all parties to this action should be permitted to be present and to conduct examination and cross-examination of the witness. For the avoidance of doubt, I request that attorneys for the Autonomy Parties be permitted to cross-examine this witness.

### B. Specification of privilege or duty to refuse to give evidence under the laws of the state of origin.

Under the laws of the United States, a party has a privilege to refuse to give evidence if the evidence discloses a confidential communication between that party and an attorney for that party that was made for the purpose of obtaining legal advice and which privilege has not been waived explicitly or implicitly. (Parties also enjoy limited privileges on other grounds not

relevant here such as communications between physician and patient, psychotherapist and patient, husband and wife, or clergy and penitent.)

United States law also recognizes a privilege against self-incrimination.

Outside the strict area of privilege, certain limited immunities are available that may place restrictions on the giving of evidence, such as the limited protection of documents created as the work product of attorneys during or in anticipation of litigation.

C.  **Details**.

It is proposed that the examination take place at the offices of Travers Smith LLP, 10 Snow Hill, London EC1A 2AL, on dates to be agreed between the parties and the witness, but in any event no later than June 30, 2016.

D.  **Fees and costs**.

The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by Autonomy, Inc. and Autonomy Systems Limited.

## IX. Conclusion

This Court expresses its appreciation for this assistance, and states that the courts of the United States are authorized by Section 1782 of Title 28 of the United States Code to extend similar assistance to the Courts of England and is prepared to provide reciprocal assistance to the English courts in any circumstances in which it may be required.

/////

/////

/////

/////

/////

This Court extends to the judicial authorities of England the assurances of the highest consideration.

Date of request:   March 16, 2016

Signature and seal of the requesting authority:

*Ronald M. Whyte*

Ronald M. Whyte, Senior United States District Judge
Robert F. Peckham Federal Building
280 S 1st Street
San Jose, California 95113

Done in Chambers in San Jose, California, this 16th day of March, 2016.

[Seal of the Court]                             Ronald M. Whyte
                                                Senior United States District Judge

Dated: 3/16/2016            *Adriana M. Kratzmann*
                            Deputy Clerk for United States District Court
                            For the Northern District of California