UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROTECHNOLOGIES, LLC,<br>    Plaintiff,<br>v.<br>AUTONOMY, INC., et al.,<br>    Defendants. | Case No. 15-cv-02220-JCS<br><br>**ORDER ON CROSS MOTIONS FOR JUDGMENT ON THE PLEADINGS**<br>Re: Dkt. Nos. 148, 149 |

## I. INTRODUCTION

Plaintiff MicroTechnologies, LLC ("MicroTech") and Defendants Autonomy, Inc. and Autonomy Systems Limited (collectively, "Autonomy") have filed motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, each asserting that the opposing party's claims or counterclaims are barred by the doctrine of *in pari delicto*, or unclean hands. The Court held a hearing on September 21, 2018. For the reasons discuss below, both motions are DENIED, without prejudice to either party asserting this defense at trial.[1]

## II. BACKGROUND

### A. MicroTech's Complaint

MicroTech alleges that it paid Autonomy for two software deals that Autonomy never completed. Am. Compl. (dkt. 135) ¶ 1. According to MicroTech, the parties had an arrangement in which Autonomy would reach deals for sales of its software to end users, but would then ask MicroTech to issue a purchase order for the software and invoice MicroTech for the transaction. *Id.* ¶ 2. MicroTech would pay Autonomy for the software, Autonomy would deliver the software to the end user, the end user would pay for the software, and MicroTech would typically be

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

entitled to keep ten percent of the amount paid. *Id.* MicroTech alleges that the parties originally used the framework for sales of software to the United States government, but began in 2009 to use the same framework for sales to non-governmental end users, several of which were completed without incident. *Id.* ¶¶ 13–14. This framework was not consistent with the parties' written reseller agreement or with the terms of the purchase orders, which were attached to MicroTech's original complaint but are not attached to its operative amended complaint. *See* Compl. (dkt. 1) Exs. A–C.

MicroTech's amended complaint pertains to two deals where MicroTech alleges that after it paid Autonomy more than sixteen million dollars pursuant to the framework set forth above, Autonomy did not complete the transactions by providing software to the end users, and the end users did not pay MicroTech. Am. Compl. ¶ 3. In the first of those transactions, MicroTech alleges that Autonomy told MicroTech in early 2010 that the Biblioteca Apostolica Vaticana (the "Vatican Library") had agreed to purchase Autonomy software, and provided MicroTech with the details of the purportedly agreed transaction. *Id.* ¶¶ 15–16. MicroTech issued a purchase order to Autonomy for the Vatican Library transaction in the amount of $11,550,000, Autonomy issued a corresponding invoice to MicroTech, and MicroTech made payments to Autonomy over the next fifteen months totaling $9,221,331.71. *Id.* ¶¶ 17–18. In late 2011, MicroTech began to believe that the Vatican Library transaction would not close, and in March of 2014, MicroTech learned that the Vatican Library had purchased software for the same purpose from a different supplier. *Id.* ¶ 20. Autonomy has neither returned the money paid by MicroTech nor delivered software to the Vatican Library. *Id.* ¶ 21.

For the second transaction at issue, MicroTech alleges that Autonomy identified Hewlett-Packard ("HP") as an end user that had agreed to purchase Autonomy's software. *Id.* ¶ 22. MicroTech issued a purchase order for $7,350,000, Autonomy invoiced MicroTech, and MicroTech paid Autonomy that amount in August of 2011. *Id.* ¶¶ 23–24. According to MicroTech, the deal never closed, but Autonomy neither delivered software to HP nor returned MicroTech's payment. *Id.* ¶ 25. Christopher "Stouffer" Egan, Autonomy's former chief executive officer and head of sales in the United States, entered a deferred prosecution agreement

with federal prosecutors in which he admitted that Autonomy's chief financial officer Sushovan Hussain "had [Egan] sell the deal to MicroTech" despite Egan and Hussain's knowledge "that HP was not interested in buying Autonomy's software." *Id.* ¶¶ 26–28. MicroTech alleges that Autonomy did not tell MicroTech that the HP software deal was unlikely to close, and that MicroTech in fact believed that the deal would close successfully. *Id.* ¶ 29.

In October of 2011, HP acquired Autonomy's parent company for more than ten billion dollars. *Id.* ¶ 30. Shareholders initiated derivative litigation against HP based on that acquisition, and HP took the position in that litigation that Autonomy's Vatican Library transaction was "fraudulent" and "fake." *Id.* ¶¶ 31–32. According to MicroTech, "MicroTech had no involvement in—or prior knowledge of—any fraud allegedly committed by Autonomy." *Id.* ¶ 33.

MicroTech brings five claims: two for breach of contract (one for each transaction), *id.* ¶¶ 34–43, two for unjust enrichment (one for each transaction), *id.* ¶¶ 44–53, and one for fraud related to the HP software transaction, *id.* ¶¶ 54–60.

Autonomy states in its answer that Autonomy "entered into a series of sham transaction with MicroTech whose purpose was to allow the improper recognition of revenue and profit by its then ultimate parent, Autonomy Corporation plc," although Autonomy denies that MicroTech paid Autonomy with its own funds, and asserts instead that Autonomy had "funneled" money to MicroTech to make such payments. Am. Answers (dkts. 136, 137)[2] ¶ 12.

### B. Autonomy's Counterclaims

Autonomy alleges in its counterclaims that MicroTech and Autonomy entered a series of sham transactions between 2009 and June 30, 2011 for the purpose of artificially inflating and accelerating the revenue and profit of Autonomy's parent corporation, which caused the parent corporation's stock value to rise and made it an attractive candidate for acquisition. Am. Counterclaim (dkt. 136)[3] ¶ 2. Autonomy alleges that, at the direction of its then-officers and

---

[2] Defendants Autonomy, Inc. and Autonomy Systems Limited filed separate answers, which are substantially identical in relevant part.

[3] Defendants Autonomy, Inc. and Autonomy Systems Limited filed separate counterclaims, which are substantially identical in relevant part, but use somewhat different paragraph numbers. *See* Autonomy Reply (dkt. 154) at 1 n.1 (stating that the "Counterclaims are substantively the same for all purposes relevant to this Reply."). For simplicity, this order includes citations only to

3

directors Hussain and Michael Lynch, among others, it paid MicroTech for MicroTech's role in the sham transactions. *Id.* ¶ 3. According to Autonomy, at least some officers of MicroTech were aware that the transactions were shams, and had agreed with Autonomy that Microtech would not use its own funds to purchase Autonomy software, but Autonomy would instead either forgive MicroTech's obligations or surreptitiously reimburse MicroTech by purchasing products that Autonomy did not need. *Id.* ¶¶ 12–13. Autonomy alleges that in some cases, Autonomy paid a "Marketing Assistance Fee" to MicroTech, even though MicroTech neither provided any assistance in marketing the products nor added any other value to the transactions. *Id.* ¶ 13(h). These transactions allowed Autonomy to recognize more than twenty-five million dollars of fictitious revenue and to accelerate the recognition of more than twenty million dollars of actual revenue. *Id.* ¶ 14.

Autonomy brings a single counterclaim against MicroTech for aiding and abetting Lynch, Hussain, and others in breaching their fiduciary duty to Autonomy, and seeks to recover the payments that Autonomy made to MicroTech. *Id.* ¶¶ 3, 21–23.

MicroTech denies the material allegations of Autonomy's counterclaim, in particular all allegations that MicroTech was aware that any transactions were shams or fraudulent at the time of MicroTech's participation. *See generally* MicroTech Answers (dkts. 138, 139).

### C. Procedural History

MicroTech filed this action in May of 2015. *See generally* Compl. The parties filed cross motions for summary judgment, and in May of 2017 the Court granted those with respect to each party's unjust enrichment claims but denied them as to all other claims on the basis that genuine issues of material fact remained to be resolved. *See generally* MSJ Order (dkt. 96).[4] MicroTech has since amended its complaint to reassert unjust enrichment claims in addition to claims that survived summary judgment. *See* Am. Compl. ¶¶ 44–53. With trial approaching, both parties sought and received permission to file their present motions for judgment on the pleadings based

---

Autonomy, Inc.'s counterclaim. Autonomy Systems Limited's counterclaim may be found at docket entry 137.

[4] *MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15-cv-02220-JCS, 2017 WL 1848470 (N.D. Cal. May 8, 2017).

on the doctrine of *in pari delicto*, an issue not raised in either party's motion for summary judgment.

### D. Arguments on the Present Motions

MicroTech seeks judgment in its favor on Autonomy's counterclaims, on the basis that "Autonomy affirmatively alleges that its own, controlling officers and directors engaged in an elaborate fraud" in order to make Autonomy a more attractive candidate for acquisition, and thus to benefit Autonomy. MicroTech Mot. (dkt. 148) at 6. While MicroTech denies that it knowingly participated in fraud, it contends that the claim that MicroTech assisted with Autonomy's own fraudulent scheme "'is precisely th[e] sort of unfairness that the unclean hands doctrine seeks to address.'" *Id.* (quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 681 (2005)) (alteration in original).

Autonomy contends in its opposition and cross-motion that the "only plausible conclusion" from MicroTech's allegations is that, because MicroTech allegedly received payment for transactions where—in contrast to the written terms of the parties' agreements—MicroTech actually took on no risk, the "only conceivable purpose for transactions of this type was to provide a basis on which [Autonomy] could recognize revenue on transactions that were, in essence, fictional." Autonomy Mot. (dkt. 149) at 3. According to Autonomy, MicroTech "effectively alleges in its Answer to [Autonomy's] Counterclaims that the parties were *in pari delicto*"; although Autonomy does not cite any particular admission in MicroTech's answer to that effect, the assertion appears to be based on one of MicroTech's affirmative defenses. *Id.* at 3–4, 6. Autonomy also suggests that because MicroTech's present motion asserts that Autonomy's counterclaims are barred by the doctrine of *in pari delicto*, MicroTech has effectively admitted that the parties were jointly engaged in wrongful conduct and should not be allowed to proceed on its own claims. *See id.* at 5–6.

Responding to the arguments of MicroTech's motion, Autonomy argues that its counterclaims should survive because the alleged wrongful conduct of Autonomy's officers and directors in purportedly breaching their fiduciary duties was adverse to the interests of Autonomy itself, and thus cannot be imputed to Autonomy. *Id.* at 6–7 (citing, e.g., *In re Crown Vantage,*

5

1    *Inc.*, No. 02-3836 MMC, 2003 WL 25257821, 2003 U.S. Dist. LEXIS 27980 (N.D. Cal. Sept. 25,
2    2003)).

3    In its opposition to Autonomy's motion and reply in support of its own motion, MicroTech
4    contends that it has not admitted that the parties were *in pari delicto* but instead consistently
5    denied that it was aware of any wrongdoing at the time of its transactions with Autonomy.
6    MicroTech Reply (dkt. 152) at 2–3. MicroTech argues that its affirmative defense of *in pari*
7    *delicto*, as well as its present motion, are based on the fact pattern alleged in Autonomy's
8    counterclaims—allegations that MicroTech denies. *Id.* at 3 & n.3. Responding to Autonomy's
9    adverse interest argument, MicroTech contends that actions taken to inflate Autonomy's stock
10   price and court an acquisition were not adverse to the company because they benefited all
11   shareholders, and that regardless, under the "sole actor" doctrine the adverse interest exception
12   does not apply where the relevant actors controlled and dominated the corporation, which
13   Autonomy has alleged was the case here. *Id.* at 4–7 & n.5 (citing, e.g., *Official Comm. of*
14   *Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 359 (3d Cir. 2001); *Crown Vantage*,
15   2003 WL 25257821, at *7–8; *Uecker v. Zentil*, 244 Cal. App. 4th 789, 798 (2016); *Peregrine*
16   *Funding*, 133 Cal. App. 4th at 679; Autonomy Counterclaim ¶ 17).

17   In Autonomy's reply brief, Autonomy renews its argument that MicroTech has admitted to
18   joint wrongdoing, but rests that argument on Autonomy's own allegations and on MicroTech's
19   defenses to the facts as alleged by Autonomy, not on MicroTech's allegations or admissions. *See*
20   Autonomy Reply (dkt. 154) at 3–5. Autonomy also asserts, without citation to authority, that
21   artificially inflating Autonomy's stock price benefited the officers and directors who engaged in
22   misconduct but was adverse to Autonomy itself, and notes its allegation that the conduct at issue
23   "'caused substantial injury and damage to Autonomy, Inc.'" *Id.* at 6–7 (quoting Am.
24   Counterclaim ¶ 23). Autonomy argues that the "sole actor" doctrine does not apply because,
25   despite its allegation that "Lynch and Hussain controlled and dominated Autonomy, Inc. affairs,"
26   Am. Counterclaim ¶ 17, Autonomy also alleges that Autonomy Corporation plc owned Autonomy,
27   Inc., and that Lynch and Hussain concealed their conduct from other directors of Autonomy
28   Corporation plc, who, Autonomy now suggests, had ultimate authority over the corporation's

6

affairs. *Id.* at 7–8. Autonomy also notes that most authority applying the "sole actor" doctrine has done so in the context of a sole shareholder, which is not the case here and has not been alleged. *Id.*

### III. ANALYSIS

#### A. Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Here, although trial is imminent, the Court granted the parties leave to file their present motions addressing *in pari delicto* defenses with respect to amended pleadings filed relatively recently.

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation and internal quotation marks omitted). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In ruling on a motion under Rule 12(c), the Court must accept all factual allegations in the complaint as true and view them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Dismissal at the pleading stage may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders

7

'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

The late stage of this case presents the somewhat unusual circumstances of the Court considering motions under Rule 12(c) after resolving motions for summary judgment. Even though a factual record was previously before the Court, the present motions require the Court to look only to the pleadings—the allegations of MicroTech's complaint and Autonomy's counterclaims, and the admissions of each party's answer. The parties have, properly, limited their briefs to the pleadings and not referenced any evidence previously presented, and the Court does not consider any such evidence in resolving the motions.

### B. *In Pari Delicto* Doctrines

The doctrine of *in pari delicto* (literally, "in equal fault") is both an equitable defense, *see, e.g.*, *Peregrine Funding*, 133 Cal. App. 4th at 677, and, while not discussed separately in the parties' briefs here, also a doctrine of contract invalidity, *see McIntosh v. Mills*, 121 Cal. App. 4th 333, 347–52 (2004). Both versions of the doctrine look to whether the party bringing a claim or seeking to enforce a contract was jointly engaged in unlawful conduct with the defendant. *Crown Vantage*, 2003 WL 25257821, at *6; *McIntosh*, 121 Cal. App. 4th at 347. In the contract context, an illegal contract may not be enforced where the plaintiff was at least as blameworthy as the defendant (or where there is an "overriding public interest to be served by voiding the agreement"). *McIntosh*, 121 Cal. App. 4th at 347 (citation omitted).

In cases involving a corporate entity, agents of the corporation must have participated in wrongdoing, and the doctrine does not apply where the agents' interests were adverse to the interests of the corporation. *See Crown Vantage*, 2003 WL 25257821, at *7; *Uecker*, 244 Cal. App. 4th at 797–98. The parties disagree on the appropriate standard for determining adverse interest. MicroTech relies on the district court's decision in *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1144 (N.D. Cal. 2013), for the proposition that "[t]he adverse interest exception is narrow and generally requires 'an agent to

8

*completely* abandon the principal's interests and act entirely for his own purposes.'" *Cement & Concrete*, 964 F. Supp. 2d at 1144 (citation omitted). That decision, which was not in the context of an *in pari delicto* defense, applied federal law and cited no authority from the California state courts. *See id.* California courts have generally framed the rule merely as whether interests were "adverse," without stating a requirement of "complete" abandonment of the corporation's interests. *See, e.g.*, *Uecker*, 244 Cal. App. 4th at 797–98; *In re California TD Investments LLC*, 489 B.R. 124, 130 (Bankr. C.D. Cal. 2013) (considering California law).

"This exception is in turn subject to an exception." *Uecker*, 244 Cal. App. 4th at 798. "[W]hen there is effectively no distinction between agent and principal," the "sole actor exception applies," and the wrongdoing of a person who sufficiently "dominate[s] and control[s]" a corporation can be imputed to the corporation without regard for whether the corporation's interests were adverse. *Id.*; *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1143–44 (2005) (citation omitted).

### C. Autonomy Is Not Entitled to Judgment on MicroTech's Claims

The resolution of Autonomy's motion for judgment is relatively straightforward. MicroTech's allegations set forth a sparse fact pattern in which the parties had an unwritten agreement that MicroTech would receive payment for issuing purchase orders without taking on any risk or expending significant effort with respect to Autonomy's sales of software. *See generally* Am. Compl. While the inference that Autonomy asks the Court to draw from those facts—that MicroTech's true role was to help facilitate Autonomy's false accounting—might be consistent with the allegations, it is not the only possible interpretation. Looking *only to MicroTech's allegations*, it is conceivable that Autonomy sought to include MicroTech in its transactions for other reasons, such as to benefit from MicroTech's reputation in the industry, or to cultivate a relationship for more substantial dealings with MicroTech in the future, among other possible explanations. Nothing in MicroTech's answer to Autonomy's counterclaims admits that MicroTech knowingly participated in any misconduct.

Autonomy relies heavily on MicroTech's own assertion of an *in pari delicto* affirmative defense, but MicroTech's defense is in response to the very different fact pattern alleged by

9

Autonomy, which—in contrast to MicroTech's allegations—explicitly describes misconduct by MicroTech in concert with Autonomy, or at least with certain officers of Autonomy. Parties may plead inconsistent theories and defenses in the alternative, and particularly in a case like this one where the evidence might well be amenable to multiple interpretations by a finder of fact, *see generally* MSJ Order, it is reasonable and appropriate for MicroTech to assert affirmative defenses that it believes would apply even if a finder of fact agrees with Autonomy's version of the underlying facts rather than with MicroTech's comparatively more innocent fact pattern. MicroTech's affirmative defense therefore provides no basis to dismiss its own claims. Autonomy's motion for judgment on the pleadings is DENIED.

### D. MicroTech Is Not Entitled to Judgment on Autonomy's Claims

MicroTech's motion for judgment on Autonomy's claims is different in that Autonomy clearly alleges concerted misconduct involving both Autonomy and MicroTech. *See, e.g.*, Am. Counterclaim ¶ 2 ("MicroTech entered into a series of sham transactions with Autonomy . . . designed to permit [parent corporation] Autonomy Corporation plc . . . to recognize revenue and profit that was, in fact, non-existent, and to accelerate improperly the recognition of other revenue and profit."). On their face, such allegations tend to suggest that Autonomy was an equal participant in the wrongdoing alleged, and that an *in pari delicto* defense should apply.

In response to MicroTech's motion, Autonomy argues that Autonomy itself was not *in pari delicto* because the officers and directors who carried out the misconduct with MicroTech—primarily Lynch and Hussain—acted adversely to Autonomy's interests. Whether that was so is not obvious. Autonomy has not identified any way in which Lynch and Hussain's interests differed from those of other Autonomy shareholders, nor has Autonomy cited authority for the proposition that efforts to inflate a corporation's value leading up to an acquisition can be considered adverse to the interests of that corporation. On the other hand, Autonomy alleges that the conduct at issue caused Autonomy to make payments to MicroTech without receiving any meaningful assistance with software sales, *see* Am. Counterclaim ¶¶ 13–16, and specifically

alleges that such payments harmed Autonomy, *id.* ¶ 23.[5] While there may be reason to believe that Autonomy and its other shareholders benefited from Lynch and Hussain's alleged conduct in courting an acquisition at artificially inflated stock price, there is no basis to resolve on the pleadings whether any benefit to Autonomy outweighed the payments that Lynch and Hussain allegedly authorized to MicroTech for no real value in return. But again, even if Lynch and Hussain's decisions ultimately harmed Autonomy because the benefit of an inflated stock price was not worth the payments made to MicroTech, it is not obvious that Lynch and Hussain's *interests* differed from Autonomy's interests.

At an earlier stage of the case, the question of whether Lynch and Hussain acted adversely to Autonomy might warrant dismissal of the complaint with leave to amend to more clearly allege such adverse interest. Motions under Rule 12(c) must be brought "early enough not to delay trial," however, and there is insufficient time remaining before the October 15, 2018 pretrial conference to resolve another round of amended pleadings and challenges thereto without delaying trial. Fed. R. Civ. P. 12(c). The Court therefore declines to grant MicroTech's motion on this basis.

Even if Lynch and Hussain acted adversely to Autonomy, MicroTech would prevail on an *in pari delicto* defense if those individuals could be considered alter egos of Autonomy such that the "sole actor" exception applied. Autonomy's allegations that Lynch and Hussain "effectively controlled Autonomy, Inc.'s business affairs," Am. Counterclaim ¶ 9, and that they "controlled and dominated Autonomy, Inc. affairs," *id.* ¶ 17, track the language used in some "sole actor" cases and provide at least some support for applying that rule here. *See, e.g.*, *Casey*, 127 Cal. App. 4th at 1443–44 (2005) (discussing the lack of allegations in that case that individuals "so 'dominated and controlled' [a corporation] that their wrongdoing should be imputed to the corporation."). Generally, however, California courts have framed the question not only as one of control, but also of ownership. *See, e.g.*, *Ucker*, 244 Cal. App. 4th at 798 (addressing whether

---

[5] It is also perhaps worth noting that the essence of Autonomy's breach of fiduciary duty claim, which MicroTech does not challenge on the pleadings except on the basis of its *in pari delicto* defense, is that Lynch and Hussain acted contrary to the interests of Autonomy. *See* Am. Counterclaim ¶ 21.

11

"the principal was 'owned' *and* 'controlled by' the agent" (quoting *Peregrine Funding*, 133 Cal. App. 4th at 679) (emphasis added)). Most if not all cases applying this exception have done so where the individual or individuals at issue wholly owned the corporate entity. *See, e.g.*, *id.* at 793, 798. Some have looked to whether the corporation was itself a "sham" whose existence should be disregarded. *Peregrine Funding*, 133 Cal. App. 4th at 678–79 (citing bankruptcy court and Third Circuit authority). There is no allegation here that Lynch and Hussain held a complete or controlling *ownership* interest in Autonomy, or that Autonomy was a sham corporation. Moreover, Autonomy's allegation that Lynch and Hussain concealed their actions from other members of Autonomy Corporation plc's board of directors tends to suggest that Lynch and Hussain lacked complete control over the company such that they could be considered alter egos. *See* Am. Counterclaim ¶ 17. Viewed in context of counterclaims as a whole, Autonomy's allegations that Lynch and Hussain controlled Autonomy do not rise to the level of establishing on the pleadings that the sole actor exception applies—and certainly would not support dismissal without leave to amend, as would be necessary to grant meaningful relief at this late stage of the case. MicroTech's motion for judgment is therefore DENIED.

## IV. CONCLUSION

For the reasons discussed above, both parties' motions for judgment on the pleadings are DENIED.

**IT IS SO ORDERED.**

Dated: September 21, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

12