UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICROTECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AUTONOMY, INC., et al., <br><br> Defendants. | Case No. 15-cv-02220-JCS <br><br> **ORDER REGARDING MOTIONS IN LIMINE** <br><br> Re: Dkt. Nos. 169, 170, 171, 174 |

## I.      INTRODUCTION

Plaintiff MicroTechnologies, LLC ("MicroTech") and Defendants Autonomy, Inc. and

Autonomy Systems Limited (collectively, "Autonomy") filed motions in limine.  The Court heard

argument at the pretrial conference on October 15, 2018.  For the reasons discussed below, the

Court hereby DENIES MicroTech's first motion (dkt. 169), to allow the jury to draw an adverse

inference from former Autonomy officers Sushovan Hussain and Joel Scott's invocation of the

Fifth Amendment; GRANTS MicroTech's third motion (dkt. 171), to preclude reference to

MicroTech officers Steven and David Truitts' initial invocation of the Fifth Amendment before

they later testified fully at depositions; and DENIES Autonomy's second motion (dkt. 174), to

preclude evidence of MicroTech's status as a service-disabled veteran-owned business.[1]  The

Court also GRANTS without further discussion MicroTech's second motion (dkt. 170), to

preclude testimony at trial by Hussain and Scott, which Autonomy does not oppose.  This order

does not resolve Autonomy's first motion in limine (dkt. 173), to introduce the testimony given by

Scott under a grant of immunity at Hussain's criminal trial, on which supplemental briefing is

pending.

## II.      MICROTECH'S FIRST MOTION IN LIMINE IS DENIED

MicroTech moves for an order permitting the jury to draw an adverse inference against

Autonomy based on Autonomy's former officers Hussain and Scott's invocation of the Fifth

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all
purposes pursuant to 28 U.S.C. § 636(c).

1    Amendment in their depositions.  The Ninth Circuit has described the standard for adverse

2    inferences from a *party*'s assertion of the Fifth Amendment privilege as follows:

> 3    When a party asserts the privilege against self-incrimination in a civil
> 4    case, the district court has discretion to draw an adverse inference
>    from such assertion. *See* [*Doe ex rel. Rudy Glanzer v.*] *Glanzer*, 232
> 5    F.3d [1258, 1264 (9th Cir. 2000)] (citing [*SEC v.*] *Colello*, 139 F.3d
>    [674, 677 (9th Cir. 1988)]). A decision not to draw the inference
> 6    "'poses substantial problems for an adverse party who is deprived of
>    a source of information that might conceivably be determinative in a
> 7    search for the truth.'" *Id.* (quoting [*SEC v. Graystone Nash, Inc.*, 25
>    F.3d 187, 190 (3d Cir. 1994)]). However, "under certain
> 8    circumstances . . . an adverse inference from an assertion of one's
>    privilege not to reveal information is too high a price to pay." *Id.* at
> 9    1265. "The tension between one party's Fifth Amendment rights and
>    the other party's right to a fair proceeding is resolved by analyzing
> 10    each instance where the adverse inference was drawn, or not drawn,
>    on a case-by-case basis under the microscope of the circumstances of
>    that particular civil litigation." *Id.* (citing *Graystone Nash*, 25 F.3d at
> 11    192). The inference may not be drawn "unless there is a substantial
>    need for the information and there is not another less burdensome way
> 12    of obtaining that information." *Id.* (citing *Serafino v. Hasbro, Inc.,* 82
>    F.3d 515, 518–19 (1st Cir. 1996)). The district court must determine
> 13    "whether the value of presenting [the] evidence [is] substantially
>    outweighed by the danger of unfair prejudice" to the party asserting
> 14    the privilege. *Id.* at 1266 (citing Fed. R. Evid. 403; *Brink's Inc. v. City
>    of New York,* 717 F.2d 700, 710 (2d Cir. 1983)). Moreover, the
> 15    inference may be drawn only when there is independent evidence of
>    the fact about which the party refuses to testify. *Id.* at 1264.

16

17    *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911–12 (9th Cir. 2008).  MicroTech argues

18    that those requirements are satisfied here.

19         Autonomy argues that California law must be applied here under Federal Rule of Evidence

20    501, and does not permit adverse inferences based on assertion of a privilege.  MicroTech does not

21    address this issue.

22         Under Rule 501, "state law governs privilege regarding a claim or defense for which state

23    law supplies the rule of decision." Fed. R. Evid. 501.  The Ninth Circuit has held that the rule

24    "'dictates that we look to state law to determine whether a court must allow a jury to draw a

25    negative inference from a party's invocation of a privilege.'"  *Home Indem. Co. v. Lane Powell

26    Moss & Miller*, 43 F.3d 1322, 1328 (9th Cir. 1995) (quoting *Jewell v. Holzer Hosp. Found.,

27    Inc.,* 899 F.2d 1507, 1514 (6th Cir. 1990)).  In *Home Indemnity*, the Ninth Circuit held that the

28    district court properly applied an Alaska rule of evidence to a case arising under Alaska law,

1    properly prevented a party "from raising negative inferences before the jury based on [the

2    opposing party's] assertion of the attorney-client privilege[,] and [properly] instruct[ed] the jury

3    not to draw such inferences." *Id.* The Sixth Circuit took a similar approach in *Jewell*, applying an

4    Ohio rule prohibiting adverse inferences to be drawn from failure to produce evidence based on an

5    assertion of privilege, and limiting cross examination of a plaintiff who had invoked physician-

6    patient privilege. 899 F.3d at 1514.

7        California Evidence Code section 913(a) reads as follows:

8           If in the instant proceeding or on a prior occasion a privilege is or was
9           exercised not to testify with respect to any matter, or to refuse to
            disclose or to prevent another from disclosing any matter, neither the
10          presiding officer nor counsel may comment thereon, no presumption
            shall arise because of the exercise of the privilege, and the trier of fact
11          may not draw any inference therefrom as to the credibility of the
            witness or as to any matter at issue in the proceeding.

12    Cal. Evid. Code § 913(a). The Assembly Committee on Judiciary's comment on the statute makes

13    clear the legislature's intent that its reach extends to invocations of the Fifth Amendment in civil

14    cases:

15           There is some language in *Fross v. Wotton*, 3 Cal. 2d 384, 44 P.2d
            350 (1935), that indicates that unfavorable inferences may be drawn
16          in a civil case from a party's claim of the privilege against self-
            incrimination during the case itself. Such language was unnecessary
17          to that decision; but, if it does indicate California law, that law is
            changed by Evidence Code Sections 413 and 913. Under these
18          sections, it is clear that, in civil cases as well as criminal cases,
            inferences may be drawn only from the evidence in the case, not from
19          the claim of privilege.

20    *Id.* (comment). "California law, then, makes no distinction between civil and criminal litigation

21    concerning adverse inferences from a witness's invocation of the privilege against self-

22    incrimination; under Evidence Code section 913, juries are forbidden to make such inferences in

23    both types of cases." *People v. Holloway*, 33 Cal. 4th 96, 131 (2004).

24        Ninth Circuit decisions permitting adverse inferences to be drawn from invocations of the

25    Fifth Amendment in civil cases would only be in tension with section 913—which should

26    presumably be applied in diversity cases in federal court under Rule 501 and *Home Indemnity*—if

27

28

1   those decisions were issued in cases governed be California law.[2]  Of the Ninth Circuit cases cited

2   by MicroTech, *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258 (9th Cir. 2000), was a

3   personal injury case from the District of Idaho applying Idaho law, and *SEC v. Colello*, 139 F.3d

4   674 (9th Cir. 1998), was an SEC enforcement action that also would not have considered

5   California law.  MicroTech also cites an appeal from civil deportation proceedings, *Unites States*

6   *v. Solano*, 120 F.3d 957 (9th Cir. 1997), and a decision by the Supreme Court considering federal

7   claims under § 1983, *Baxter v. Palmigiano*, 425 U.S. 308 (1976).  California law would not have

8   "supplie[d] the rule of decision," Fed. R. Evid. 501, in any of those cases, and those courts

9   therefore would have had no reason to consider California privilege law.

10      *Nationwide Life Insurance*, an interpleader case, stands alone among MicroTech's citations

11   as applying California law for the rule of its decision while nevertheless permitting an adverse

12   inference based on a valid[3] invocation of the Fifth Amendment.  *See* 541 F.3d at 905.  There does

13   not seem to be any reason why Rule 501, *Home Indemnity*, and section 913 should not have

14   prohibited the inference.  The panel's opinion did not discuss the California rule, and it appears

15   that no party raised the issue of section 913.  This Court declines to read *National Life Insurance*

16   as binding authority on an issue it did not address, particularly in light of the previous decision in

17   *Home Indemnity*.  The Court concludes that *Home Indemnity* remains a better statement of the law.

18   Applying section 913 here, no adverse inference is permitted.

19      Even if that were not so, Autonomy also makes a strong argument that an inference *against*

20   *Autonomy* is inappropriate under the Second Circuit's widely cited test for adverse inference based

21   on non-party witnesses, because Autonomy does not control its former officers, there is at this

22   point no special relationship of loyalty between them, their interests are not aligned, and the

23

24   [2] One decision of the Central District of California has noted the tension between the California
    rule and the Ninth Circuit's rule.  *Lemelson Winery, LLC v. Golden Energy, Inc.*, No. CV 07-1800
25   DSF (SSx), 2009 WL 10699659, at *3 n.3 (C.D. Cal. June 30, 2009).  That court declined to draw
    an adverse inference because it was unnecessary to do so.  *Id.*
26   [3] At the hearing, MicroTech raised for the first time the California Court of Appeal's decision in
    *People v. Lopez*, 71 Cal. App. 4th 1550 (1999).  As discussed further below in the context of
27   Autonomy's opposition to MicroTech's third motion in limine, *Lopez* concerns the propriety of
    commenting on a witness's refusal to answer questions while asserting "a privilege he was not
28   entitled to claim."  *Id.* at 1555.  It has no bearing on the issue at hand, where no party has
    challenged the validity of Hussain and Scott's assertion of their Fifth Amendment privilege.

4

1   former officers have not controlled or participated in this litigation.  *See LiButti v. United States*,

2   107 F.3d 110, 123–24 (2d Cir. 1997).  MicroTech only addresses in passing the fact that these

3   individuals are not parties, citing a District of Massachusetts decision holding that, "[i]n

4   appropriate circumstances," a former employee's invocation of the Fifth Amendment can support

5   an adverse inference against the former employer.  *Brookridge Funding Corp. v. Aquamarine,*

6   *Inc.*, 675 F. Supp. 2d 227, 234 (D. Mass. 2009).  Given the risk of prejudice and the lack of clarity

7   of exactly what inference might appropriately be drawn from these witness's blanket assertions of

8   the Fifth Amendment at their depositions, this is not such a case.  Accordingly, under Rule 403 of

9   the Federal Rules of Evidence, the Court concludes that the risk of unfair prejudice and jury

10  confusion substantially outweighs any minimal relevance that the jury might properly draw from

11  Scott and Hussain's invocation of the Fifth Amendment privilege.

12      MicroTech's motion to allow an adverse inference is therefore DENIED.

**III.    MICROTECH'S THIRD MOTION IN LIMINE IS GRANTED**

14      MicroTech moves to preclude evidence of or reference to the fact that its former officers

15  David Truitt and Steven Truitt invoked their rights under the Fifth Amendment, given that both

16  Truitts later testified fully at subsequent depositions.  Both were no longer employed by

17  MicroTech when they invoked the Fifth Amendment at depositions in 2016.  Both testified at the

18  criminal trial of Sushovan Hussain, with Steven having been granted immunity, and David having

19  concluded that the applicable statute of limitations had expired with respect to his conduct.  Both

20  testified fully at depositions renoticed by Autonomy in August and September of 2018 after the

21  criminal trial concluded.

22      According to MicroTech, the fact that the Truitts previously invoked the Fifth Amendment

23  is irrelevant under Rule 402 of the Federal Rules of Evidence and overly prejudicial under Rule

24  403.  MicroTech contends that offering evidence of the Truitts' invocation of the Fifth

25  Amendment for a purpose of showing a lack of integrity would be contrary to the purpose of the

26  Fifth Amendment.

27      Autonomy frames the issue in the context of California Evidence Code section 913, which

28  MicroTech does not address.  According to Autonomy, "[o]nce a witness waives his Fifth

5

1   Amendment privilege, he no longer has such a privilege and [section] 913 is no longer

2   applicable." Opp'n to Pl.'s 3d Mot. in Limine (dkt. 177) at 3. Autonomy argues that the Truitts'

3   invocation of the Fifth Amendment goes to their state of mind and suggests "their recognition that

4   their conduct was part of a fraudulent scheme . . . that exposed them to potential criminal

5   liability." *Id.* at 4.

6         Most of the cases on which Autonomy relies for this premise—that section 913 ceases to

7   apply after a witness waives a privilege—concern witnesses' defective attempts to invoke a

8   privilege after waiver or where it otherwise did not apply. In *United States v. Hearst*, a criminal

9   defendant had already waived her Fifth Amendment privilege by testifying at trial, but objected to

10  the government continuing to ask questions on cross examination despite her repeated assertion of

11  the Fifth Amendment in response to those questions. 563 F.2d 1331, 1341–42 (9th Cir. 1977).

12  The Ninth Circuit held that the defendant had waived her privilege as to the matters at issue and

13  the questions were permissible. *Id.* at 1342. In *Brown v. Small*, a habeas case, Judge Wilken held

14  that the jury in the petitioner's state court trial "was entitled to draw a negative inference" when a

15  witness who had been granted immunity, and thus no longer had a privilege to claim, nevertheless

16  refused to testify. No. C 08-05529 CW (PR), 2011 U.S. Dist. LEXIS 15936, at *17 (N.D. Cal.

17  Feb. 7, 2011). Judge Wilken relied on a California appellate decision, *People v. Lopez*, that

18  similarly held there was no error in calling a witness to testify who had already pleaded guilty to a

19  crime and thus no longer had a valid Fifth Amendment privilege with respect to the conduct at

20  issue, but nevertheless refused to answer questions. 71 Cal. App. 4th 1550, 1554–56 (1999)

21  (citing *Hearst*, 563 F.2d at 1341). Together, these cases stand for the proposition that a jury may

22  take notice when a witness "refuse[s] to answer questions, basing his refusal on a privilege he was

23  not entitled to claim." *Id.* at 1555.

24        This case is different. Autonomy does not dispute that the Truitts were entitled to claim a

25  Fifth Amendment privilege at the time of their first depositions. Nothing in *Hearst*, *Brown*, or

26  *Lopez* suggests that section 913 does not apply and an adverse inference may be drawn from a

27  prior, rightful invocation of the Fifth Amendment if the witness *later* waives that right when

28  circumstances have changed such that the witness no longer perceives any jeopardy from

6

United States District Court
Northern District of California

1   testifying.

2   A fourth case that Autonomy cites, *Nguyen v. Adams*, is perhaps closer to the facts here. In

3   that habeas case, a witness at the petitioner's state court trial was evasive about the fact that he had

4   been granted immunity, and the judge took over questioning him on that issue, ultimately

5   becoming frustrated and eliciting, first, testimony from the witness that he had not refused to

6   testify, but later, testimony that the witness had in fact invoked the Fifth Amendment to refuse to

7   testify unless granted immunity. *Nguyen*, No. C 04-4104 MHP (pr), 2008 U.S. Dist. LEXIS

8   111043, at *25–27 (N.D. Cal. Oct. 10, 2008). Judge Patel held that the defendant's right to due

9   process was not violated, in large part because the witness's "own evasiveness rather than the

10  judge's actions" thoroughly undermined his credibility. *Id.* at *30–31. *Nguyen* does not stand for

11  the proposition that the trial judge was correct to call the jury's attention to the witness's prior

12  invocation of the Fifth Amendment. To the contrary, a California court held on direct appeal from

13  Nguyen's conviction that although it is relevant whether a witness was granted immunity, "the

14  jury should not learn that a witness has validly invoked the privilege against self-incrimination."

15  *People v. Nguyen*, No. H021767, 2002 WL 31525585, at *11 (Cal. Ct. App. Nov. 13, 2002)

16  (unpublished and not for citation). The court affirmed Nguyen's conviction not because the trial

17  judge acted properly, but instead because Nguyen "*was not prejudiced* by the trial judge's

18  questioning of [the witness] regarding whether he had refused to testify without a grant of

19  immunity." *Id.* at *13 (emphasis added).

20  With no case holding to the contrary, the plain language of section 913 (as applicable here

21  under Rule 501 and *Home Indemnity*) dictates that any reference to the Truitts' earlier invocation

22  of the Fifth Amendment should be excluded:

23          If in the instant proceeding *or on a prior occasion* a privilege is *or
            was* exercised not to testify with respect to any matter . . . neither the
24          presiding officer nor counsel may comment thereon, no presumption
            shall arise because of the exercise of the privilege, and the trier of fact
25          may not draw any inference therefrom as to the credibility of the
            witness or as to any matter at issue in the proceeding.
26

27  Cal. Evid. Code § 913(a) (emphasis added). The federal cases cited by MicroTech reaching the

28  same result under principles of relevance and prejudice serve to bolster that conclusion, although

7

United States District Court
Northern District of California

1    given the rule set by section 913, it is not necessary to reach that analysis. *E.g.*, *Harrell v. DCS*

2    *Equip. Leasing Corp.*, 951 F.2d 1453, 1464 (5th Cir. 1992); *see* Pl.'s 3d Mot. in Limine (dkt. 171)

3    at 4–5. Notably, Autonomy does not cite any case allowing reference to an earlier invocation of

4    the Fifth Amendment where a witnesses subsequently provided a complete deposition, even in

5    jurisdictions where there is no rule like section 913 prohibiting inferences to be drawn from

6    assertion of privilege in all circumstances.

7         MicroTech's motion to preclude any reference to the Truitts' invocation of the Fifth

8    Amendment is therefore GRANTED.

9    **IV.    AUTONOMY'S SECOND MOTION IN LIMINE IS DENIED**

10        Autonomy moves to exclude evidence of MicroTech's status as a service-disabled veteran-

11   owned business on the basis that it is irrelevant to the issues in dispute and unduly prejudicial. As

12   MicroTech correctly argues in its response, MicroTech's preferred status for government contracts

13   explains the origin of the parties' relationship in which MicroTech's status helped Autonomy sell

14   its products to government purchasers. The nature and background of that relationship may well

15   be relevant to the jury's understanding of the particular transactions at issue.

16        Moreover, MicroTech intends, and is entitled, to argue that it believed the transactions at

17   issue here—in which MicroTech asserts that it was entitled to receive commissions despite

18   playing a minimal role in procuring or managing the sales—to be legitimate because some non-

19   governmental entities also prefer to do business with disabled veterans, which is supported by

20   MicroTech CEO Anthony Jimenez's testimony to that effect. The jury might well be called upon

21   to decide not necessarily whether customers in fact preferred to do business with MicroTech for

22   that reason, but whether MicroTech reasonably believed that the transactions were legitimate

23   because it believed customers had such a preference.

24        Finally, Autonomy's theory of the purported fraud is that the Federal Cloud transaction, in

25   which Autonomy purportedly purchased a software platform relevant to federal contracts from

26   MicroTech, was in fact a sham to funnel money from Autonomy to MicroTech. MicroTech's

27   preferred government contract status might well be relevant to MicroTech's defense that the

28   Federal Cloud transaction was a bona fide deal that would have been of value to Autonomy,

8

1    although the relationship between its status and that particular deal is not entirely clear from the

2    record available.

3        Any one of those reasons that the evidence is relevant outweighs the relatively minor risk

4    of prejudice from jurors who are biased in favor of disabled veterans—a potential bias that, as

5    MicroTech notes, Autonomy is free to explore in voir dire. Autonomy also cites the occurrence of

6    the Veterans Day holiday during trial as increasing the potential for prejudice, but because trial has

7    been rescheduled since the motion was filed, any affect that the holiday might have on jurors'

8    biases is no longer relevant. This motion is DENIED.

9    **V.**      **CONCLUSION**

10        For the reasons discussed above, MicroTech's first motion in limine and Autonomy's

11    second motion in limine are DENIED, and MicroTech's third motion in limine is GRANTED.

12    MicroTech's second motion in limine, which is unopposed, is also GRANTED. The Court defers

13    consideration of Autonomy's first motion in limine pending supplemental briefing.

14        **IT IS SO ORDERED.**

15    Dated: October 16, 2018

16

                              _____

17                            JOSEPH C. SPERO
                            Chief Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28